## HASTINGS et al. v. MANHATTAN TRUST CO.

### (Circuit Court of Appeals, Eighth Circuit. November 9, 1896.)

### No. 752.

MORTGAGES—ASSIGNMENT AND FORECLOSURE.

The G. Co. was a corporation engaged in the business of making loans upon mortgage. The R. Co. was a corporation organized by the same persons and having the same officers as the G. Co., and closely associated with it. The G. Co. made a loan to one H., and took from him a note, secured by mortgage, which was subsequently, after default in payment, passed backward and forward several times between the two corporations, by transactions which were made to appear upon the books to be actual sales and purchases of the note and mortgage, and of certain other notes, given by H. during the transactions, but no actual money passed upon any of the transfers. The mortgage was finally foreclosed by the R. Co., and the land bought in by it. After this sale, the G. Co. made an apparent purchase of the mortgage, and transferred it, as a valid security, to the M. Trust Co., as security for debentures of the G. Co. The G. Co. having become insolvent, the M. Trust Co. brought suit against all the parties to have the legal title to the land vested in it. It was found from the evidence that the R. Co. was organized for the purpose of taking care of defaulted mortgages of the G. Co., to avoid the necessity of many foreclosures in its name; that the R. Co. never had any bona fide interest in the mortgage or the land, but acted merely for the benefit of the G. Co. Accordingly, *held*, that as the G. Co., at the time of the transfer of the mortgage to the M. Trust Co., was the equitable owner of the land, the effect of the transfer was to vest in the M. Trust Co. all its interest therein, and the latter company was entitled to obtain the legal title to the land from the R. Co.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Charles A. Willard, for appellants.

Arthur M. Keith and Frank B. Kellogg, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This suit was brought by the Manhattan Trust Company, the appellee, against the Minneapolis Realty Company, hereafter termed the "Realty Company," and A. W. Hastings, the assignee of the realty company, who are the appellants; also, against the Northwestern Guaranty Loan Company, hereafter termed the "Guaranty Company," the Minneapolis Trust Company, as assignee of the guaranty company, and against Francis B. Hart and Imogene L. Hart,—for the purpose of divesting the legal title to certain lands out of the said A. W. Hastings, as assignee, and vesting the same in the Manhattan Trust Company. The circuit court of the United States for the district of Minnesota, where the case originated, granted the relief prayed for, and two of the defendants below, to wit, A. W. Hastings, as assignee, and the Minneapolis Realty Company, have appealed.

The undisputed facts disclosed by the record are these: On September 1, 1890, Francis B. Hart and Imogene L. Hart, his wife, mortgaged the tract of land to which the litigation relates, to the aforesaid guaranty company, to secure the repayment of the sum of $17,085, which was loaned to them by said company for a period of

six months. On August 26, 1891, no part of the note which was given for the money so borrowed had been paid to the guaranty company, and there was then due from said Hart to the guaranty company, including the amount due on said note, the sum of $18,797. Hart thereupon executed and delivered to the aforesaid realty company eight other notes, aggregating $18,797, for which he received a check, drawn by the realty company on the guaranty company as its banker, in the sum of $18,797. This check was indorsed and delivered to the guaranty company. On September 1, 1891, the guaranty company assigned to the realty company the aforesaid mortgage, dated September 1, 1890; and on the same day the realty company executed a receipt for the same, and delivered it to Francis B. Hart. The receipt recited, in substance, that the assigned mortgage was held by the realty company as collateral to secure the payment of the eight notes that had been executed by Hart in its favor on August 26, 1891. At the date of these transactions, and prior and subsequent thereto, the realty company kept an account with the guaranty company as its banker. When the guaranty company received from Hart the check of the realty company in the sum of $18,797, of date August 26, 1891, this account showed a balance in favor of the realty company in the sum of $2,423.93; but on August 31, 1891, the realty company indorsed and delivered to the guaranty company the eight notes which had been executed by Hart, for which it received a credit on its account with the guaranty company in the sum of $18,797. After the transfer, as aforesaid, of the eight Hart notes, they were sold by the guaranty company to eastern parties. They became due on February 26, 1892, but were not paid by the maker. They were accordingly taken up by the guaranty company, and remained in its possession until April 21, 1892. At the latter date, these notes were charged back to the realty company; and said company thereupon drew its check on the guaranty company, in favor of the guaranty company, in the sum of $17,264.43, which check was ostensibly given by the realty company to take up or repurchase the notes. The book entries with reference to this transaction show that the account between the two companies was debited, on the one hand, with the sum of $17,264.43, and credited, on the other hand, with a like amount. When the last-mentioned check purports to have been drawn, the account showed a balance to the credit of the realty company in the sum of $10,788. Thereafter the realty company caused the original Hart note and the mortgage securing the same (which was held as collateral to secure the payment of the notes dated August 26, 1891) to be sold, and at such sale the realty company became the purchaser of the collateral, on June 6, 1892, for the sum of $19,561.47. Afterwards the realty company brought an action to foreclose the aforesaid mortgage of date September 1, 1890, and secured a decree of foreclosure in the proper court, under which decree it became the purchaser of the mortgaged property for the sum of $20,227.85, at a sale made by the proper officer on November 21, 1892. No money was advanced or paid by the realty company at either of the last-mentioned sales,

except such sum as was necessary to pay the costs of the two proceedings. On May 10, 1893, the account of the realty company on the books of the guaranty company was credited with the sum of $17,085, which credit purported to be the amount of a check that day drawn by the guaranty company in favor of the realty company, to take up the original Hart note and the mortgage securing the same. On the same day, Frank J. Percival, the secretary of the guaranty company, obtained the original Hart note and mortgage from the attorney who had had charge of the foreclosure proceedings, and transmitted the same, together with an assignment of the mortgage, to the Manhattan Trust Company. The note and mortgage in question were delivered to said trust company in exchange for other securities which the trust company held as security for the payment of certain debentures which had been theretofore issued and sold by the guaranty company. The trust company supposed that said note and mortgage were the property of the guaranty company, and it accepted the same from that company in exchange for such other securities, without any actual knowledge of the transactions heretofore described that had taken place between the guaranty company and the realty company. The relations existing between the guaranty company and the realty company in August, 1891, and from that time forward until both companies failed and became insolvent, were exceedingly close and intimate. They occupied adjoining offices in the same building, kept their books and records in the same vault, and the affairs of both companies were managed by the same persons; that is to say, the same persons who acted, respectively, as president, vice president, and treasurer of the guaranty company acted in a similar capacity for the realty company.

The decision of the case at bar hinges on the question whether the entries in the account between the guaranty company and the realty company, relative to the Hart note and mortgage of date September 1, 1890, as they appear on the books of the guaranty company, represent actual transactions between the two companies, or whether they were purely fictitious and colorable, and were made to conceal the true ownership of said mortgage. In other words, the question to be determined is whether the realty company ever became, or intended to become, the owner of the Hart note and mortgage, or whether it acted throughout for the accommodation of the guaranty company, and permitted itself to be vested with an apparent title to the mortgage, and, after the foreclosure proceedings, with an apparent title to the mortgaged property, for the benefit of the guaranty company. Frank J. Percival, the secretary of the guaranty company, under whose direction all the entries in the aforesaid account respecting the mortgage appear to have been made, testified, in substance, to the following facts: That the realty company never had any interest in the Hart note of $17,085, and the mortgage securing the same, which are now in controversy; that the note and mortgage in question were simply passed through the account of the realty company on the books of the guaranty company, to give the

realty company an appearance of owning the same, the real owner-' ship thereof being at all times vested in the guaranty company; that on August 26, 1891, when the realty company drew its check on the guaranty company in favor of Hart for the sum of $18,797, no money was paid or intended to be paid, but said check was immediately offset by a credit given to the realty company in the sum of $18,797, ostensibly for the eight Hart notes, which were at the same time delivered to the guaranty company; that when the said notes were subsequently charged back to the realty company, on April 21, 1892, the charge was balanced without the payment of any money, by a corresponding entry made on the same day on the opposite side of the account; that the realty company did not, in fact, purchase or intend to purchase the Hart mortgage when the same was assigned to it on September 1, 1891, the transaction on that occasion being a mere device, which was resorted to, to extend the original loan, and at the same time make it appear that the loan had been taken up by the realty company; that all the proceedings to foreclose the said mortgage were taken at the instance and for the benefit of the guaranty company, by attorneys employed by it for that purpose; that said note and mortgage were in the custody of the attorney of the guaranty company when they were taken and forwarded to the Manhattan Trust Company in exchange for other securities; and that when they were so taken and forwarded, a credit was given to the realty company, in the account between the two companies, in the sum of $17,085. The same witness further testified, in substance, that the realty company was organized, among other things, for the purpose of taking care of defaulted mortgages belonging to the guaranty company, and to relieve the latter company of the necessity of showing upon its books that it was the owner of certain mortgages when they became overdue and were unpaid; that it was the custom of the two companies to charge mortgages backward and forward in the account that was kept between them, whenever it was deemed advisable to shift the apparent ownership of a mortgage from one company to the other; that certain mortgages securing short-time paper belonging to the guaranty company were thus treated, and were foreclosed in the name of the realty company; that the object was to prevent too many foreclosure suits from being brought in the name of the guaranty company, and thereby affecting its credit; and that whenever, in a suit brought by the realty company, property was acquired by the realty company at a foreclosure sale, it was the practice of the guaranty company to cause such property to be either resold, or mortgaged for its benefit.

We have become satisfied, by a careful perusal of the record, that the foregoing statements of the witness Percival are trustworthy and substantially correct. Such was the view entertained by the trial court, and we have no doubt that its finding in that respect was right. The statements of this witness are strongly confirmed by the intimate relations which existed between the guaranty company and the realty company, by the fact that their affairs were

managed by the same persons, and by the manner in which the note and mortgage in question were shuffled back and forth in the account, from one company to the other, without any apparent motive for so doing, unless it was to disguise the ownership of the Hart note for the benefit of the guaranty company. The first transaction between the two companies, when the realty company, having a balance with its banker of only $2,423.93, drew its check on said balance for $18,797, and at the same time received a credit for a like amount, is highly suspicious. It is not probable, we think, that the book entries disclosing that transaction represent an actual purchase by the realty company of a note that was then overdue. It is more probable, we think, that the transaction was fictitious and colorable, and that it was merely a device to make it appear on the books of the guaranty company that the original loan had been paid, when in fact it had simply been extended by the original creditor. The same observation may be made with reference to the subsequent transaction of April 21, 1892; that is to say, the entries in the account under that date do not represent, and were not intended to represent, an actual purchase of the Hart notes, of date August 26, 1891, which were then overdue, and had been taken up by the guaranty company, but they were intended to make it appear on the books of the latter company, contrary to the fact, that the amount due to it on said notes had been paid by the realty company. We are satisfied that the subsequent foreclosure proceedings were prosecuted in the name of the realty company for the benefit of the guaranty company, and that the title to the property in controversy, which was acquired by the realty company at the foreclosure sale, was held by it in trust for the benefit of the guaranty company, and not for its own benefit.

Such being our conclusion touching the issues of fact above stated, it follows that the appellants have no just ground to complain of the decree rendered by the circuit court, which directed them to convey the property in controversy to the Manhattan Trust Company on the payment of certain attorney's fees and taxes that had been advanced and paid by the appellants. The guaranty company was the equitable owner of the property when it delivered the original Hart note and mortgage to the Manhattan Trust Company in exchange for other securities by it held, and the necessary effect of such transfer was to vest the trust company with whatever right, title, or interest the guaranty company then had in the property covered by said mortgage. In view of the circumstances under which the note and mortgage were transferred to the trust company, it must be presumed that the guaranty company intended by such transfer to pledge its interest in the property that was described by the mortgage, for the purpose of securing the payment of its debentures, and a court of equity should give effect to that intention. The decree of the circuit court is therefore affirmed.